**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph T Reilly,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Steve Wozniak, et al.,<br><br>　　　　　Defendants. | No. CV-18-03775-PHX-MTL<br><br>**ORDER** |

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 124.) Defendants move for summary judgment on Plaintiff's remaining claims for breach of implied-in-fact contract, copyright infringement, and declaratory relief. For the following reasons, the motion is granted in part and denied in part.[1]

**I.    BACKGROUND**

As the Court noted in a previous order, Plaintiff Ralph T. Reilly is an Assistant Professor of Management Information Systems at the Barney School of Business, University of Hartford. (Doc. 1 ¶ 3; Doc. 99 at 2.) On September 12, 2010, he emailed Defendant Steve Wozniak ("Wozniak"), the co-founder of Apple Computers Inc., stating, "I want to start a high tech university." (Doc. 1 ¶ 4; at 16.) Wozniak replied, "Great idea." (*Id*.) Wozniak also provided advice, including that Plaintiff should start by "evaluat[ing] the need for this university," and then, after planning was complete, he "should be able to

---

[1] The Court believes that oral argument would not significantly aid the decisional process. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearing); LRCiv 7.2(f) (same).

raise the money to build this dream." (*Id.* at 16.) Aside from this advice, Wozniak stated that he was "too busy to do anything more." (*Id.*)

Plaintiff sent a follow-up email on September 22, 2010, stating, "I am going to be bold here . . . Would you consider endorsing the idea of ME starting the WOZ Institute of Technology?" (Doc. 125 at 15.) Wozniak replied, "[O]f course. . . go ahead. . . I wish you total luck and success." (*Id.*) He also stated, "I'll get more involved eventually but right now my life is crammed." (*Id.*)

Plaintiff claims that he and Wozniak took steps to develop the idea over the next two years. Plaintiff states that he introduced Wozniak and his wife, Janet Wozniak, to potential business partner Charter Oak State College ("Charter Oak") by email on or about December 22, 2010. (Doc. 129 at 12 ¶ 4.) Wozniak and Charter Oak ultimately executed a Personal Service Agreement for purposes of developing the "Woz School of Technology." (*Id.* ¶ 5.) Wozniak asserts that he has "no recollection of ever speaking with anyone from Charter Oak or performing any work with anyone associated with that entity." (Doc. 125 at 3 ¶ 19.)

Plaintiff and Wozniak met in person on March 25, 2011 at a SARTA Tech Index Celebration Luncheon in Sacramento, California.[2] Plaintiff states that the purpose of the meeting was to discuss his "proposed tech university." (Doc. 129 at 12 ¶ 5.) He alleges that the two "agreed to proceed with a 'deal' handshake depicted in a photograph" taken at the luncheon and attached as Exhibit D to the Complaint. (Doc. 1 ¶ 6, at 32.) Wozniak, however, states that he "didn't make any deal" with Plaintiff, that he "never, ever" enters into business deals, and that he has no recollection of taking a photograph with Plaintiff. (Doc. 125 at 6.) Further, Wozniak states that he takes photographs like the one attached to the Complaint "thousands of times a year" because "[p]eople actually pay money to get a picture taken with me at meet and greets and at my speeches." (*Id.*)

Plaintiff claims that Wozniak permitted him to proceed with potential investors in a

---

[2] On the Court's information and belief, "SARTA" is a reference to the Sacramento Area Regional Technology Alliance.

November 21, 2011 email, stating "I figure it's your idea." (*Id*. ¶ 6; at 34.) Plaintiff created a website and logo for the project and obtained copyright protection for the "graphic images, photographs, and tangible expressions" attached as Exhibit I to the Complaint.[3] (*Id.* at 4, 59–76.)

On January 23, 2012, Plaintiff states that he and Wozniak met with the Apollo Group in San Francisco, California, to discuss the idea of a high-tech university. Plaintiff attached a copy of the PowerPoint presentation he purportedly presented to the Apollo Group as Exhibit F to the Complaint. (Doc. 1 at 35–42.) Wozniak states that he does not recall Plaintiff being present during that meeting, and that there is "no evidence that any documents from the Apollo Group meeting were ever reviewed by Wozniak or provided to the other Defendants." (Doc. 124 at 5.)

On April 29, 2013, Wozniak's business manager, Ken Hardesty, emailed Plaintiff, advising that he was aware that Plaintiff had created an online "platform demo of 'Woz Institute of Technology.'" Mr. Hardesty stated that he was "not sure what [Plaintiff] was up to," but that he was to "shut down this site immediately and confirm back to me directly." (Doc. 125 at 90.) Plaintiff apologized and took down the website shortly thereafter. (*Id*. at 6.)

More than four years later, on November 11, 2017, Plaintiff learned that Wozniak had entered into a business arrangement with Defendant Southern Careers Institute, Inc. ("SCI") to develop "Woz U." (*Id*. ¶ 10.) Wozniak and SCI ultimately formed the entities Woz U Education, LLC ("Woz Arizona") and Woz U Education Holdings, LLC ("Woz Delaware") to formalize Woz U business arrangements. Plaintiff argues that, "[a]s introduced to the public, Woz U included graphic design, course design and course outline which were substantially similar" to those created by Plaintiff and disclosed to Wozniak. (Doc. 136 at 6.) Defendants assert that Woz U, which was at the time operating under the name "Coder Camps," approached Wozniak, through Mr. Hardesty, to use Wozniak's

---

[3] The Complaint states that this included an A+ Certification, Ethical Hacker Certification, Web Design and Development Certification, Network Security Certification, Network Administration Certification, and Cloud Essentials Certification. (*Id*. at 4.)

name in connection with its existing online school. (Doc. 124 at 7.) Defendants also state that Plaintiff has "produced no evidence that any of the Defendants utilized any idea, business plan, curricula, images, sales strategy or educational training concept that he created." (*Id*. at 6–7.)

Plaintiff emailed Wozniak to congratulate him on November 21, 2017. Wozniak responded on December 24, 2017, stating, "You are right on the mark. You had the right idea . . . I doubt it would have happened without your initial idea." (*Id*. ¶ 14; at 91.) Upon Defendants' refusal to compensate Plaintiff for his "right idea," this action ensued. (*Id*. at 7.)

Plaintiff filed the Complaint against Wozniak, Woz Arizona, Woz Delaware, and SCI on November 3, 2018. (Doc. 1.) It alleges that Defendants "used, applied, and exploited" Plaintiff's copyrighted work in marketing and publicizing Woz U. (*Id*. ¶¶ 12, 13.) The Complaint asserts claims of breach of an implied-in-fact contract against Wozniak and claims of money had and received, copyright infringement, declaratory relief, and accounting against all Defendants. (*Id*. at 7–11.) It seeks damages of at least $1,000,000, disgorgement of Defendants' profits, an accounting, declaratory judgment, and attorneys' fees. (*Id*. at 13.) Upon Defendants' motion, the Court previously dismissed Plaintiff's claims for money had and received and accounting as preempted by the Copyright Act, 17 U.S.C. §§ 101–810. (Doc. 99.)

Defendants now move for summary judgment on Plaintiff's remaining claims for breach of an implied-in-fact contract, copyright infringement, and declaratory relief (Counts 1, 3, and 4, respectively). (Doc. 124.) The motion is now fully briefed. (Docs. 136, 144.)

**II.     LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could

- 4 -

return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

### III. DISCUSSION

#### A. Breach of Implied-in-Fact Contract

Wozniak moves for summary judgment on Plaintiff's claim for breach of implied-in-fact contract (Count 1). The Complaint states that Plaintiff and Wozniak entered into an implied-in-fact contract under California law. Under this purported agreement, Wozniak "voluntarily accepted the benefit of Reilly's Work with full knowledge of the circumstances and of the fact that Reilly did not submit and communicate Reilly's Work to [Wozniak] gratuitously." (Doc. 1 ¶ 25.) Wozniak argues that summary judgment is appropriate because the evidence demonstrates that Plaintiff never sought to sell any idea to Wozniak. For the following reasons, the Court agrees with Wozniak.

#### 1. Relevant Law and Prior Ruling

Under California law, where "an idea is furnished by one party to another, a contract sometimes may be implied even in the absence of an express promise to pay." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004), opinion amended on denial of reh'g, 400 F.3d 658 (9th Cir. 2005). As the Court previously noted in its order on Defendants' motion to dismiss, this principle arose from the California Supreme Court case *Desny v. Wilder*, 299 P.2d 257 (Cal. 1956). In that case, the plaintiff alleged that Paramount

Pictures turned his pitched idea into a feature film without compensating him. *Id*. at 726–27. The court held that a contract exists where "the circumstances preceding and attending disclosure, together with the conduct of the offeree acting with knowledge of the circumstances, show a promise [to pay] of the type usually referred to as 'implied' or 'implied in fact.'" *Id*. at 738. The Ninth Circuit has endorsed *Desny* claims, stating, "[t]o establish a *Desny* claim for breach of implied-in-fact contract, the plaintiff must show that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso*, 383 at 967.

This Court previously concluded that the Complaint contained the "minimal requirements" to state a claim for breach of an implied-in-fact contract. (Doc. 99 at 20) (*citing Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1150 (N.D. Cal. 2007) ("While this is by no means a compelling allegation that the work was disclosed to the defendants in a manner that would create an implied contract . . . it is sufficient to state a claim for an implied contract.")). The Court noted, first, that Plaintiff alleged that he prepared the work at issue. *Grosso*, 383 at 967. (Doc. 1 ¶ 4 (Plaintiff emailed Wozniak stating "I want to start a high tech university"); ¶ 6 (Wozniak emailed Plaintiff, stating "I figure it's your idea"); ¶ 8 (Plaintiff "created a website and logo")). Second, the Court found that, at the pleading stage, Plaintiff "disclosed the work to the offeree for sale." *Grosso*, 383 at 967. The Court noted that this issue was "more difficult" because "at no point does the Complaint explicitly state that Plaintiff tried to *sell* Reilly's work to Wozniak." (Doc. 99 at 18–19.) Plaintiff also alleged that "the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso*, 383 at 967. The Court concluded that Plaintiff had stated a claim "without commenting on the likelihood that Plaintiff will prevail on the merits" and that, at the motion to dismiss stage, "Plaintiff does not have to allege in detail all the facts upon which he bases his claim." (*Id*. at 19–20.) The Court now addresses whether Plaintiff's claim for breach of an implied-in-fact contract

survives summary judgment.

### 2. Evidence of Implied-in-Fact Contract

Wozniak argues that the evidence in this case makes clear that "Plaintiff never sought to sell any idea or concept to Wozniak." (Doc. 124 at 10.) Wozniak notes, for example, that Plaintiff's initial email stated, "I want to start a high tech university." He then asked whether Wozniak would "consider endorsing the idea of ME starting the WOZ Institute of Technology…?" (Doc. 125 at 15.) In his deposition, Plaintiff explained this email as meaning, "'Would you consider the idea of endorsing the idea of me'—me meaning me personally—'starting the Woz Institute of Technology?' Me. Me. Me. Me, Ralph." (*Id.* at 42.) Further, when asked, "So in your email to Mr. Wozniak, you're asking him if he would be okay with starting a school with the name Woz Institute of Technology, correct?," Plaintiff stated, "Yes." (*Id.* at 18.)

Plaintiff also testified, "I tried to find a platform because I didn't have any money, and I wasn't asking Mr. Wozniak for any money. I just wanted to have the partnership where he would lend the name and I would do everything else because that was the only way it would work." (Doc. 125 at 41.) When asked, Plaintiff agreed that by "partnership," he meant somebody "to actually finance [the] deal with Mr. Wozniak." (*Id.* at 43.) Further, Wozniak points to the following exchange in Plaintiff's deposition:

> Q: At the end of the day, the only thing that you really wanted from Mr. Wozniak in regards to the Woz Institute of Technology was the use of his name, true?
>
> A: Yes. Correct. I wanted to use his name to open doors and create a stir because he is such a tech icon and it would create a—it would be a successful school if we had him on board.

(*Id.* at 46–47.)

Plaintiff also stated in his deposition that he entered into an agreement with Wozniak at the March 25, 2011 SARTA luncheon—memorialized in a photograph of the two shaking hands. (Doc. 125 at 26.) Plaintiff asserts that at this same luncheon, Wozniak entered into a Personal Services Agreement with Charter Oak. (Doc. 125 at 27.) Plaintiff

confirmed that his own name does not appear on the Personal Services Agreement. Instead, he argues, "Mr. Wozniak would not have entered into the agreement with Charter Oak without me." (*Id*. at 26.) When asked about the terms that he and Wozniak entered into, Plaintiff stated at his deposition, "I told Mr. Wozniak thank you for signing the agreement. I said this is a good idea, the online platform. They're already in the online space. I said that this is a good idea. We can go forward with our joint venture[.]" (Doc. 129 at 131.)

Wozniak stated, in his own deposition, that he has "never heard" the name "Charter Oak," does not "recall doing anything with Charter Oak," and does not "even know what [Charter Oak] is as an entity." (Doc. 125 at 64.) Wozniak also stated that he "didn't make any deal" at the 2011 SARTA Tech Luncheon. (*Id*. at 66.) "I didn't make any deal. I don't do business . . . I never, ever have. You won't find any incidences where I did a deal on my own, no." (*Id*.) With respect to his interactions with Plaintiff, Wozniak stated at his deposition, "Reilly called me and was real nice, and he was like a fan, and he wanted to start the Woz Institute of Technology or something. I said go ahead. I wasn't going to have time to do anything with it, and I don't care. I didn't ask for any money. I don't know. A deal, I guess I would be getting something." (*Id*. at 67.) When asked if he recalled speaking with Plaintiff about a joint venture agreement, Wozniak stated, "Oh, no, absolutely not." (*Id*.) Wozniak stated, with respect to the photograph, "a hundred people will go through at a luncheon sometimes or dozens, or even up to, even up to closer to a thousand. I'm just there to take a picture in front of somebody's logo. For everybody that comes through, they paid to get a picture." (*Id.* at 77.) Plaintiff admitted at his deposition that other people took photographs with Wozniak at the same luncheon. (*Id*. at 26.)

Wozniak argues that this evidence confirms that "Plaintiff never asked Wozniak for anything other than the use of his name to market an online school to others." (Doc. 124 at 3.) As a result, Wozniak could not possibly have breached an implied-in-fact contract because Plaintiff did not "disclose the work to the offeree for sale." *Grosso*, 383 at 967. Plaintiff responds that he "need not prove that [Wozniak] intended to 'buy' or 'bought' his idea." (Doc. 136 at 10.) Instead, Plaintiff argues that the relevant cases do not limit implied-

in-fact contract claims to "submissions of ideas to the person who will actually produce or publish the idea." (*Id*.) He argues that the fact that Wozniak *himself* never intended to start Woz U is legally irrelevant to his implied-in-fact contract claim. (*Id*. at 13.)

The Court is not convinced by Plaintiff's argument. As *Desny* and its progeny make clear, to state a claim for breach of implied-in-fact contract, "the plaintiff must show that the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso*, 383 F.3d at 967. *See also Alexander v. Metro-Goldwyn-Mayer Studios Inc.*, No. CV 17-3123-RSWL-KSX, 2017 WL 5633407, at *9 (C.D. Cal. Aug. 14, 2017) ("But Plaintiff has no allegations that the Creed Idea was offered for sale."). The fundamental problem for Plaintiff is that he has not demonstrated that he disclosed his idea to Wozniak for payment.

An implied-in-fact contract requires a "reasonable expectation of payment which can be inferred from the facts and circumstances." *Minniear v. Tors*, 266 Cal. App. 2d 495, 502 (Ct. App. 1968). Here, the evidence establishes that Plaintiff solicited Wozniak's "endorsement" to start the Woz Institute of Technology, but not an agreement for payment. (Doc. 125 at 15.) Put another way, "there needs to be more than a unilateral offer and [Plaintiff] only offers arguments as to his intent, not [Wozniak's] understanding or conduct." *Jordan-Benel v. Univ. City Studios, Inc.*, CV 14-5577-MWF(MRWx), 2015 WL 9694896, at *3 (C.D. Cal. Feb. 13, 2015). The court in *Desny* aptly illustrated the situation at hand here: "[t]he idea man who blurts out his idea without having first made his bargain has no one but himself to blame for the loss of his bargaining power. The law will not in any event, from demands stated subsequent to the unconditioned disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure." *Desny*, 46 Cal. 2d at 739.

The Court finds that a reasonable juror could not conclude that Plaintiff and Wozniak formed an implied-in-fact contract. In so ruling, the Court notes that Plaintiff

states that "[i]t is the law of the case that the Complaint states a *Desny* claim and as a result [Wozniak] is not entitled to judgment as a matter of law merely because Reilly does not allege and prove actual offer and acceptance." (Doc. 136 at 9.) This is not entirely accurate. In ruling on Defendants' motion to dismiss, the Court found that Plaintiff had "sufficiently stated the minimal requirements" to proceed with his claim for breach of an implied-in-fact contract against Wozniak. (Doc. 99 at 20.) It specifically noted that it was "sympathetic to Wozniak's argument" that Plaintiff did not seek to sell anything to him. (*Id*. at 19.) Accepting all of Plaintiff's allegations as true, though, as required for a motion to dismiss, the Court concluded that dismissal was not appropriate at that early stage. Now, the Court concludes that the discovery described above makes clear that neither Plaintiff nor Wozniak intended to enter into an agreement for payment. Because no reasonable juror could find that Plaintiff "disclosed the work to the offeree for sale," the Court grants summary judgment to Wozniak on Plaintiff's breach of implied-in-fact contract claim.[4]

### B. Copyright Infringement

Defendants also move for summary judgment on Plaintiff's claim of copyright infringement against all Defendants (Count 3).[5] Plaintiff created and obtained copyright protection for a website and logo for the "Woz Institute of Technology" and obtained copyright protection for the related "graphic images, photographs, and tangible expressions."[6] (Doc. 1 at 4, 59–76.) The Complaint states that Defendants infringed Plaintiff's copyrighted works "by and in connection with the operation, marketing and promotion of Woz U." (*Id*. ¶¶ 31–36.) Defendants argue that "there is no direct evidence that the Defendants copied the Plaintiff's copyrighted materials." (Doc. 124 at 13.) Plaintiff asserts that the law does not require such evidence. The Court agrees with Plaintiff and

---

[4] Wozniak also argues that the two-year statute of limitations for this claim has expired. (Doc. 124 at 11.) Based on the Court's determination above, it need not reach this argument.
[5] Defendants did not previously move to dismiss this claim. (Doc. 99.)
[6] The Complaint states that this includes an A+ Certification, Ethical Hacker Certification, Web Design and Development Certification, Network Security Certification, Network Administration Certification, and Cloud Essentials Certification. (*Id*. at 4.)

denies Defendants' motion for summary judgment on this claim.

### 1. Ownership of Valid Copyright

To prevail on his claim for copyright infringement, Plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). As to the first element, Defendants do not dispute that Plaintiff registered the website and logo for the Woz Institute of Technology with the United States Copyright Office.[7] (Doc. 124 at 12.) Plaintiff's certificates of registration entitle him to a "rebuttable presumption of originality." *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000) (internal citation omitted). That said, Defendants state, in passing, that a plaintiff cannot "succeed on a copyright claim if the materials allegedly copied are not protected by the Copyright Act." (Doc. 124 at 12.) Defendants also state that "ideas, concepts, and processes are not protected from copying." (*Id*. at 12) (citing *Attia v. Society of the New York Hospital*, 201 F.3d 50, 54 (2nd Cir. 1999)).

To the extent that these statements may be interpreted as an argument that Plaintiff's creations are, in fact, not copyrightable, the Court rejects it. The Court is mindful that the Copyright Act specifically excludes from copyright protection "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Nonetheless, to constitute an "original" work subject to copyright means "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc.*, 499 U.S. at 345 (citing M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)). The "requisite level of creativity is extremely low; even

---

[7] Although neither the Complaint nor the pending briefing specify the precise date on which Plaintiff's copyrights were registered, "[u]pon registration of the copyright . . . a copyright owner can recover for infringement that occurred both before and after registration." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019). Defendants do not dispute that Plaintiff obtained copyright protection before filing the present lawsuit. (Doc. 124 at 12.)

a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (citation omitted). Accordingly, although facts themselves are not copyrightable, factual compilations may possess the requisite originality because the "compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Id*. at 348.

The Court finds that Plaintiff's website and logo, as attached to the Complaint, are entitled to copyright protection. Defendants, other than raising general assertions about the requirements for copyright protection, have not demonstrated (or argued) that the copyrights are invalid. *See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (A valid copyright registration "shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights.") (citation omitted). Plaintiff's website and logo also indisputably required "some creative spark." *Feist Publications, Inc.*, 499 U.S. at 345. The Court notes that this copyright protection does not extend to individual facts and ideas contained within the copyrighted materials. It also does not extend to Wozniak's name or likeness. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001) ("A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102."). Nonetheless, the "organization and expression of the facts or ideas contained in" Plaintiff's website and logo for the Woz Institute of Technology are subject to copyright protection. *B2B CFO Partners, LLC v. Kaufman*, 787 F. Supp. 2d 1002, 1007 (D. Ariz. 2011). *See also Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020) (noting that "it is not difficult to meet the famously low bar for originality").

### 2. Copying of Original Elements

The Court now assesses whether Defendants have demonstrated that they did not copy the original elements of Plaintiff's copyrighted works. *Feist Publications, Inc.*, 499 U.S. at 361. Defendants argue that "there is no direct evidence" that they copied Plaintiff's copyrighted materials. (Doc. 124 at 13.) They point to the fact that Wozniak's business

manager, Ken Hardesty, learned in April 2013 that Plaintiff had created a "dummy website" for the Woz Institute of Technology, was upset, and demanded that Plaintiff take down the unauthorized website, which Plaintiff did. (Doc. 125 at 6.) Defendants also point to Plaintiff's deposition testimony that, when asked whether Wozniak or Mr. Hardesty provided a copy of the website for the Woz Institute of Technology to any other Defendant, Plaintiff responded, "I don't know. I don't know. I have no firsthand knowledge that they did anything." (*Id*. at 45.)

Such direct evidence is not required for a copyright infringement claim. Indeed, "direct evidence of copying is not available in most cases." *B2B CFO Partners, LLC*, 787 F. Supp. 2d at 1007. In the absence of such evidence, a plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Skidmore as Tr. for Randy Craig Wolfe Tr.*, 952 F.3d at 1064. This type of evidence "shows that the similarities between the two works are due to copying rather than . . . coincidence, independent creation, or prior common source." *Id*. (citation omitted). Such a finding may be based on the overlap of unprotectable as well as protectable elements. *Id*.

The Ninth Circuit uses a two-part test to determine whether a defendant's work is "substantially similar to the plaintiff's copyrighted work." *Id*. (*citing Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). First, the "extrinsic test" compares the "objective similarities of specific expressive elements in the two works." *Id*. The second prong, the "intrinsic test," "test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Id*. (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008)). A district court "applies only the extrinsic test on a motion for summary judgment, as the intrinsic test is reserved exclusively for the trier of fact." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018).

The Court finds that Defendants are not entitled to summary judgment based on the extrinsic test for substantial similarity. First, Defendants have not even raised this argument, instead relying on their assertion that Defendants possessed no direct knowledge

of Plaintiff's copyrighted materials. (Doc. 124 at 12.) There is "no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Anthony v. Equifax Info. Servs., LLC*, No. 213CV01424TLNCKD, 2018 WL 2287954, at *7 (E.D. Cal. May 18, 2018) (citing *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)). Similarly, there is no "duty on the part of the judge" to research and refine "perfunctory and undeveloped arguments any time a party's attorney has in the slightest way adverted to such arguments in its submissions." *Id.* (internal quotations omitted).

Further, upon review of the relevant materials (Doc. 129 at Exs. H–J; 59–101), the Court finds that Plaintiff has presented at least a genuine dispute of material fact. Plaintiff's copyrighted materials for the Woz Institute of Technology contain "obvious similarities" to those developed by Defendants for Woz U. *Cavalier*, 297 F.3d at 826. Plaintiff's and Defendants' websites both promote online educational programs named after Wozniak, shortened to "Woz." (Doc. 129 at 74, 91.) The websites both promote video-based curricula to be completed at the students' own pace. (*Id.* at 74, 93.) Both websites offer various course options, some of which appear to be substantially similar. For example, the Woz Institute of Technology and Woz U websites both offer courses focused on security (titled "Cyber Security" and "Network Security Certification," respectively) and comprehensive programs (the "Full-Stack Software Developer" and the "A+ Certification"). (*Id.* at 75, 93.) Both also contain "About" sections with biological information about Wozniak and the respective programs' accessible technology courses. The websites also contain substantially similar photographs of Wozniak in front of a black background. (*Id.* at 60, 91.) As to the parties' logos, both contain "WOZ" in capital letters. And at least one of Plaintiff's copyrighted logos uses a font that the Court deems to be substantially similar to that used in Defendants' materials. (*Id.* at 87, 91).

Granting summary judgment on "substantial similarity may be appropriate in the rare case where no reasonable juror could find that the defendant had not captured the total concept and feel of the copyrighted work." *2B CFO Partners, LLC*, 787 F. Supp. 2d at

1009. *See also Cavalier*, 297 F.3d at 822 ("[S]ummary judgment is not highly favored on questions of substantial similarity in copyright cases.") (citation omitted). Given that the Court finds that the works at issue contain "objective similarities," this is not one of those "rare cases." *Skidmore as Tr. for Randy Craig Wolfe Tr.*, 952 F.3d at 1064. The Court "will not substitute its overall impression" of the respective websites and logos "for that of the individual fact finders." *B2B CFO Partners, LLC*, 787 F. Supp. 2d at 1009. The Court will deny summary judgment as to Plaintiff's copyright infringement claim.[8]

### C. Declaratory Relief

Plaintiff seeks a declaratory judgment from the Court stating:

> A. Woz U embodies the Reilly Work in its operation, marketing and promotion.
> B. Defendants and each of them are obligated to account and pay to Reilly the reasonable and fair value of Reilly's Work.

(Doc. 1 ¶ 40) (Count 4). Defendants move for summary judgment on this claim because, they state, Plaintiff's other remaining claims fail as a matter of law. (Doc. 124.) The Court agrees that the portion of section (B) requiring Defendants "to account" is no longer relevant in light of the Court's prior dismissal of Plaintiff's accounting claim. (Doc. 99 at 14.) Otherwise, given the denial of Defendants' motion for summary judgment on Plaintiff's copyright infringement claim, summary judgment is not appropriate as to Plaintiff's request for a declaratory judgment. The Court will therefore deny Defendants' motion as to Plaintiff's requested declaratory judgment, other than as to the language "to account." That said, a declaratory judgment "is a remedy for an underlying cause of action; it is not a separate cause of action." *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755,

---

[8] The Court notes that there is no inconsistency in entering summary judgment on the breach of implied-in-fact contract claim but retaining the copyright infringement claim. The "rights created under California law emanating from *Desny* [are] qualitatively different from the rights protected by federal copyright law because a *Desny* claim includes an added element: an agreement to pay for use of the disclosed ideas." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 980 (9th Cir. 2011).

770 (D. Ariz. 2012). Accordingly, the Court construes Plaintiff's request for declaratory judgment as a request for a remedy, rather than as a separate cause of action.

### D. Attorney's Fees

Defendants seek attorney's fees under the Copyright Act, which permits a court, "in its discretion," to award a "reasonable attorney's fee" to the prevailing party. 17 U.S.C. § 505. In light of the denial of Defendants' motion for summary judgment on the copyright infringement claim, the Court declines to award attorney's fees at this time.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 124) is **granted in part and denied in part**. Defendants' Motion for Summary Judgment is granted in favor of Defendants as to Plaintiff's claim for breach of implied-in-fact contract. It is denied as to Plaintiff's claims for copyright infringement and declaratory judgment as described herein.

**IT IS FURTHER ORDERED** setting a trial-setting conference for **March 18, 2021, at 11:00 AM**, in Courtroom 503, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. Participants shall have their calendars available and be prepared to schedule dates for a Final Pretrial Conference and for trial. In-person appearance is preferred; however, the Court will permit telephonic appearance upon request.

Dated this 2nd day of March, 2021.

Michael T. Liburdi
United States District Judge